

FILED
Dec 04, 2025
10:49 AM(CT)
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



### TENNESSEE BUREAU OF WORKERS' COMPENSATION
### IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT MEMPHIS

| | | |
|---|---|---|
| BAUDILIO VELASQUEZ (Deceased), ) | | Docket No. 2021-08-0835 |
| Employee, ) | | |
| v. ) | | |
| BROTHERS CONSTR., ) | | State File No. 60106-2021 |
| Employer, ) | | |
| And ) | | |
| TRAVELERS PROP. CAS. CO. ) | | Judge Shaterra R. Marion |
| OF AM., ) | | |
| Carrier. ) | | |

## COMPENSATION HEARING ORDER GRANTING BENEFITS

Baudilio Velasquez died from an injury in the course and scope of his employment with Brothers Construction. His surviving partner requested benefits for his three minor children.

The Court held a compensation hearing on November 18, 2025, where the parties agreed on all issues except Mr. Velasquez's average weekly wage which, for the reasons below, the Court finds was $950.00.

### History of Claim

Mr. Velasquez died from a work injury on September 8, 2020, leaving three minor children who live with their mother in Guatemala. He received authorized medical treatment, but the bills have not been paid.

Argelio Samayoa, Mr. Velasquez's brother, testified Mr. Velasquez began working for Mr. Juan Esparza at Brothers Construction soon after Mr. Esparza received his contact information in mid-July 2020 and worked "from five to seven days" a week, sometimes on weekends, depending on the weather. He started at 6:30 or 7:00 a.m. and returned between 8:00 and 10:00 p.m. He was paid by check, but Mr. Samayoa did not see the amounts or know how much Mr. Velasquez was paid.

1

Maridalia Lucas Perez, Mr. Velasquez's surviving partner, testified he worked for about two months and sent her money about five times during his employment. He sometimes sent money after eight days, and sometimes after 15 days. If he sent money after eight days, he sent "roughly $1,000," and if he sent money after 15 days he sent "roughly $1,800." She said he only kept enough money to eat but later acknowledged he also had to pay rent.

Mr. Esparza stated, in his discovery responses that were submitted into evidence, that Mr. Velasquez worked for him for only eight days before his injury. However, at trial he said that Mr. Velasquez could have worked for five to six weeks. Additionally, he testified that Mr. Velasquez worked between three and five days a week, and that he worked some weekends if the weather or other problems prevented him from working five weekdays.

Mr. Esparza testified that he paid Mr. Velasquez $160 per day, and he generally worked five days a week, although that varied due to weather and availability of work. At one point on direct examination, Mr. Esparza did not recall ever paying Mr. Velaquez more than $160 a day for a 5-day work week. That amount equals the $800 per week he listed in his discovery responses.

However, in response to the question, "How much did you pay [Mr. Velasquez]?" Mr. Esparza stated, "Normally I paid $950." On cross examination, in response to the statement, "A few minutes ago you testified that on average you paid [Mr. Velasquez] $950 per week," Mr. Esparza replied, "More or less, depending on the number of days that we worked." He paid Mr. Velasquez by check on two occasions but stated he did not have copies of those checks to produce in response to discovery.

**Findings of Fact and Conclusions of Law**

The only issue is Mr. Velasquez's average weekly wage. At a compensation hearing, the claimant has the burden to prove by a preponderance of the evidence all essential elements of his claim. Tenn. Code Ann. § 50-6-239(c)(6) (2025).

Mr. Velasquez's dependents argue that his average weekly wage was $960, and Brothers argues that his average weekly wage was $800.

"Average weekly wages" means the earnings of the injured employee. Mr. Esparza offered no wage statement detailing Mr. Velaquez's wages for the weeks he worked, as required by Tennessee Compilation Rules and Regulations 0800-02-21-10 (3) (2023).

2

While testimony did not establish when Mr. Velasquez started working for Brother's Construction, all parties agreed he worked less than 52 weeks. So, his earnings are divided by the number of weeks and parts of weeks when he earned wages. *Id.* § 50-6-102(3)(A-B).

Although Mr. Esparza testified that he paid Mr. Velaquez with a check on two separate occasions, he offered no written proof of wages. His testimony is the only direct evidence about Mr. Velasquez's average weekly wage, and it was contradictory.

At one point, he said he paid Mr. Velasquez $160 per day, five days a week, which would total $800 per week. However, he said twice that Mr. Velasquez's pay "on average" or "normally" for a week was $950. This $950 amount also aligns more closely with the amounts Mr. Velasquez sent to Ms. Perez, $1,000 every eight days or $1,800 every fifteen days.

Brothers argued that the $800 figure should be given more weight because he gave that number in his discovery responses. However, multiple inconsistencies exist between Mr. Esparza's discovery responses and his live testimony, including how much he paid Mr. Velasquez and how many days Mr. Velasquez worked for him.

The Court therefore finds that the preponderance of evidence shows that Mr. Velasquez's average weekly wage was $950.00 per week, and the compensation rate is $633.33.

Death benefits are subject to the maximum total benefit under section 209(b)(3), defined as 450 weeks times the state average weekly wage. *Id*. § 102(13)(D). On September 8, 2020, the state average weekly wage was $1,093.40 meaning the maximum total benefit in this case is $447,300 (450 x $1,093.40). And a $950 average weekly wage yields a compensation rate of $633.33.

The Court holds that the children should equally share the benefits. They are entitled to those benefits at the rate of $633.33 per week. Thus, each shall receive $57,542.55 in a lump sum for the period from Mr. Velasquez's death until November 30, 2025 ($211.11 x 272 weeks and four days). After that date, each shall receive $211.11 per week until they turn 18 years old, or 22 years old if they attend post-secondary school. These payments shall continue under section 50-6-210(e)(11), or until the maximum benefit is reached. If one of the children reaches age 18 and declines to attend post-secondary schooling, or alternatively reaches age 22, then the compensation rate shall increase to $316.66 per week for the remaining

two children until they reach age 18, or age 22 if they attend post-secondary school. All payments are subject to the maximum total benefit.

**IT IS, THEREFORE, ORDERED** as follows:

1. Brothers Construction shall pay all authorized medical bills pursuant to the Tennessee fee schedule.

2. Mr. Velasquez's average weekly wage is $950.00 per week.

3. Brothers Construction shall pay the maximum total award of death benefits equaling $447.300 under section 209(b)(3) as follows:

   - To the duly accredited consular officer of Guatemala, accrued benefits of $ 57,542.55 for each child in a lump sum for a total of $172,627.66, to be used on behalf of the children.

   - To the duly accredited consular officer of Guatemalan, $633.33 per week, equal to $211.11 weekly for each child until they reach 18 or leave post-secondary school as described above. As each child is no longer eligible for benefits, the compensation rate shall be divided equally by the remaining eligible children.

4. Mr. Byrce Ashby shall file a motion for fees as guardian ad litem, itemized by task, date of performance, time spent, and the requested hourly rate within ten days of the date of this order. Brothers Construction shall pay that fee but is granted five days to respond to Mr. Ashby's motion.

5. Mr. Mink is entitled to an attorney's fee. He shall file an affidavit in support of the requested fee within ten days of the date of this order.

6. The Court taxes the $150.00 filing fee to Brothers Construction, to be paid to the Court Clerk within five business days of this order becoming final, and for which execution might issue, if necessary.

7. Brothers Construction shall prepare and submit to the Court Clerk a Statistical Data Form (SD2) within 10 business days of this order becoming final.

8. Unless appealed, this order shall become final 30 days after issuance.

**IT IS ORDERED.**

4

**ENTERED December 4, 2025.**

_____

**Judge Shaterra R. Marion**
**Court of Workers' Compensation Claims**

**APPENDIX**

Exhibits:
1. Text Messages between Argelio Samayoa and Juan Esparza
2. Video Taken at Horse Race on August 16, 2020
3. Mr. Esparza's responses to Mr. Velasquez's Interrogatories and Requests for Production

**CERTIFICATE OF SERVICE**

I certify that a copy of this Order was sent as indicated on December 4, 2025.

| Name | Email | Service Sent to: |
|---|---|---|
| **Robert Mink Sr., Robert Mink Jr., Employee's Attorneys** | X | robmink@holcombgroup.com<br>kwhalen@holcombgroup.com |
| **Neil M. McIntire, Employer's Attorney** | X | nmcintire@howell-fisher.com |
| **Bryce Ashby, Guardian Ad Litem** | X | bryce@donatilaw.com |

_____

**Penny Shrum, Court Clerk**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

5



<u>Right to Appeal</u>:

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board.  To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.
    ➢ If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.
    ➢ If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.
    When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal.  If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee.  If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk.  The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted.  For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

    **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable.  See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____
**Employee**

v.

_____
**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the
Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-
stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____    ☐ Motion Order filed on _____

☐ Compensation Order filed on_____    ☐ Other Order filed on_____

issued by Judge _____.

### Statement of the Issues on Appeal
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

### Parties
**Appellant(s)** (Requesting Party): _____  ☐ Employer ☐ Employee

Address: _____  Phone: _____

Email: _____

Attorney's Name: _____  BPR#: _____

Attorney's Email: _____  Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee
Appellee's Address: _____ Phone: _____
Email: _____
Attorney's Name: _____ BPR#: _____
Attorney's Email: _____ Phone: _____
Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.


_____
*[Signature of appellant or attorney for appellant]*